UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HELEN CORFAIA SWANSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:14-CV-39-TAV-HBG |
| | ) | |
| SUMMIT MEDICAL GROUP, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on Defendant's Partial Motion to Dismiss [Doc. 13]. Defendant, Summit Medical Group ("Summit Medical"), moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's claims under Tenn. Code Ann. §§ 50-1-101 *et seq.*, 50-701 *et seq.*, 50-1-801; plaintiff's claim for punitive damages under the Tennessee Human Rights Act (the "THRA"); and plaintiff's request for liquidated damages for failure to state a claim for which relief can be granted. Plaintiff responded in opposition to defendant's motion and in the alternative, requested leave to amend her complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure [Doc. 15]. For the reasons stated below, and after considering the relevant law, the Court will **GRANT** defendant's motion to the extent explained in this memorandum opinion and allow plaintiff leave to amend her complaint in a manner that is not inconsistent with this opinion.

I.  **Background**[1]

Summit Medical provides primary and ancillary health care, as well as laboratory services, throughout East Tennessee [Doc. 1 ¶ 8]. Plaintiff, an African American female, was employed with defendant's Fort Loudon, Tennessee office (the "Loudon Office") as a floater beginning on December 13, 2010 [*Id.* ¶¶ 8–10]. Plaintiff's job "required her to 'fill-in' where ever she was needed," allowing her to interact with most of the doctors and staff at defendant's Loudon Office [*Id.* ¶¶ 12–13]. Plaintiff alleges that from the beginning of her tenure, she "suffered harassment at the hands of Dr. Randall Morton, the managing physician at the Loudon office" [*Id.* ¶ 14]. According to plaintiff, Dr. Morton constantly belittled her by yelling at her in the presence of her peers and patients and by blaming scheduling mix-ups on her even though she was not the only person scheduling his appointments [*Id.* ¶¶ 15–16]. Plaintiff reported Dr. Morton's harassment to her supervisor, Jack Cross, who then reported Dr. Morton to defendant's human resources department [*Id.* ¶¶ 17–18]. Plaintiff also alleges that Dr. Morton made a remark to Jack Cross "about 'those people,' referring to African-Americans" [*Id.* ¶¶ 19–20]. Plaintiff further alleges that after she reported Dr. Morton, she was informed that she would not receive a pay raise for 2013, and she was told that this was because "Dr. Morton refused to sign off on the budget which would allow her to get a raise" [*Id.* ¶¶ 21–22].

---

[1] For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint." (citations omitted)).

Plaintiff filed her first complaint with the Tennessee Human Rights Commission (the "THRC") in July 2012 [*Id.* ¶ 23]. Plaintiff states that Dr. Morton also received complaints for sexually inappropriate conduct toward other employees which were reported to defendant's human resources department [*Id.* ¶¶ 24–26]. Plaintiff believes that it was because of these complaints that Dr. Morton was terminated in November 2012 [*Id.* ¶ 27].

Plaintiff alleges that all the other employees blamed her for Dr. Morton's termination [*Id.* ¶ 28]. Particularly, plaintiff alleges that Dr. Morton's partner, Dr. Walter, blamed her for Dr. Morton leaving and, therefore, retaliated against her [*Id.* ¶ 29]. Plaintiff asserts that she was scheduled to have an annual evaluation in December 2012, which would have determined whether she would receive any pay raise [*Id.* ¶¶ 30–31]. Dr. Walter, however, instructed plaintiff's supervisor to postpone the evaluation even though "[m]ost of the employees received their evaluations on time" [*Id.* ¶¶ 32–33]. Plaintiff also alleges that she received a written reprimand on December 27, 2012, for a comment she had made [*Id.* ¶ 35]. Plaintiff claims that she was told the reprimand was because of her tone, and because others could hear her [*Id.* ¶ 36]. Plaintiff believes, however, that no one could hear her and no one except the front supervisor, who wrote her up, complained [*Id.* ¶¶ 37–38]. According to plaintiff, another employee, Nikita Rodrigues, who is Caucasian, "yelled in the front office about a patient matter" and left the work place without permission but was not written up immediately [*Id.* ¶¶ 41–44].

Rather, Dr. Walter only eventually wrote up Ms. Rodrigues because of a directive from the central office [*Id.* ¶¶ 45–46].

Plaintiff states that her evaluation was supposed to take place on December 13, 2012 [*Id.* ¶ 47]. After her evaluation was postposed and plaintiff was not given a raise, plaintiff filed a second complaint with the THRC [*Id.* ¶¶ 48–49]. Plaintiff eventually received her evaluation in January 2013, after she had filed the complaint [*Id.* ¶ 50]. Plaintiff alleges that her supervisor gave her the highest possible scores on the evaluation, but was instructed to reduce them by Dr. Walter [*Id.* ¶¶ 51–52].

Plaintiff states that in January 2013, she was given additional work responsibilities [*Id.* ¶ 53]. And on February 27, 2013, plaintiff was terminated along with three other employees [*Id.* ¶ 54]. The reason plaintiff was given for her termination was "lack of work" [*Id.* ¶ 55]. Plaintiff states that she was given a list of positions within Summit Medical that she could apply for and told that she was available for rehire [*Id.* ¶¶ 57–58]. Plaintiff states that she applied for several positions but was never rehired [*Id.* ¶ 59].

Plaintiff believes that the reason she was given for her termination was pretextual [*Id.* ¶ 56]. Plaintiff subsequently brought this action alleging discrimination and retaliatory discharge under Title VII of the Civil Rights Act of 1964, the THRA, and Tennessee common law wrongful discharge statutes [*Id.* ¶¶ 60–73]. Plaintiff seeks compensatory damages, liquidated damages, and punitive damages [*Id.*].

4

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

5

### III. Analysis

Defendant moves for dismissal of plaintiff's claims under Tenn. Code Ann. §§ 50-1-10 *et seq.*, Tenn. Code Ann. §§ 50-701 *et seq.*,[2] and Tenn. Code Ann. §§ 50-1-801, to the extent that plaintiff asserts claims beyond Tenn. Code Ann. § 50-1-304, arguing that the complaint does not contain sufficient factual allegations to state a claim under the remaining portions of these statutes [Doc. 13 ¶ 1–4]. Defendant also moves to dismiss plaintiff's claim for punitive damages under the THRA on the grounds that they are not recoverable [*Id.* ¶ 5]. Finally, defendant argues that plaintiff's claim for liquidated damages should be dismissed because the complaint asserts no cause of action that would entitle her to an award of liquidated damages [*Id.* ¶ 6].

#### A. Plaintiff's Claims under Tenn. Code Ann. §§ 50-1-101 *et seq*. and Tenn. Code Ann. § 50-1-801

Defendant argues that plaintiff's allegation of violations under Tenn. Code Ann. §§ 50-1-101 *et seq.* is a broad reference that makes it unclear which specific statute plaintiff claims defendant has violated [*Id.* ¶ 2]. Particularly, defendant argues that outside of Tenn. Code Ann. § 50-1-304, none of the other statutory provisions are applicable in this case [*Id.*]. Defendant also argues that Tenn. Code Ann. § 50-1-801 does not provide a cause of action; rather, it merely sets forth the burden of proof for alleging wrongful discharge [*Id.* ¶ 4]. In response, plaintiff argues that while the other

---

[2] Defendant's motion for partial dismissal asserts that this appears to be an incorrect citation and proceeds under the assumption that plaintiff meant to reference Tenn. Code Ann. §§ 50-1-701 *et seq.* Because plaintiff has not opposed this assumption in her response, the Court will adopt this assumption.

6

portions of the statutes referenced in her complaint may not be recovery statutes, they are relevant to her cause of action because they provide definitions, instructions, and burdens of proof [Doc. 15]. In the alternative, plaintiff seeks leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15 [*Id.*].

Tenn. Code Ann. §§ 50-1-101 *et seq.* contains provisions relating to issues such as employment of illegal aliens, denial of employment because of affiliation with labor unions or employee organizations, interference with choice of physicians, and volunteer firefighters. The Court agrees with defendant that most of these statutory provisions are inapplicable to this case as plaintiff has not pled any facts that would allow relief under them. Additionally, Tenn. Code Ann. § 50-1-801 sets forth the burden of proof for plaintiff's wrongful discharge claim, but does not in itself provide a cause of action. Accordingly, to the extent that plaintiff asserts any claims beyond Tenn. Code Ann. § 50-1-304, defendant's motion to dismiss will be granted. Plaintiff, however, will be granted leave to amend her complaint to set out the statutory provisions that govern her claims, and may include references to any specific statutory provisions that provide relevant definitions, instructions, and burdens of proof.

### B. Plaintiff's Claims under Tenn. Code Ann. §§ 50-1-701 *et seq*.

Defendant next argues that plaintiff has not alleged any facts in her complaint that would form the basis of an alleged violation under Tenn. Code Ann. §§ 50-1-701 *et seq*. [Doc. 13 ¶ 3]. In plaintiff's response, she failed to address this portion of defendant's argument. Tenn. Code Ann. §§ 50-1-701 *et seq*. contains the Tennessee Lawful

7

Case 3:14-cv-00039-TAV-HBG   Document 16   Filed 05/28/14   Page 7 of 10   PageID #: 79

Employment Act, which requires employers to obtain and maintain lawful resident/employment verification information. The Court agrees that plaintiff has not alleged any facts to show that she is entitled to relief under this statute. Additionally, the Court notes that plaintiff's failure to respond to this argument may be deemed a waiver of any opposition to the relief sought. *See* E.D. Tenn. L.R. 7.2; *see also Taylor v. Unumprovident Corp.*, No. 1:03-CV-1009, 2005 WL 3448052, *2 (E.D. Tenn. Dec. 14, 2005) (noting that a responding party waives opposition to an opponent's argument when it fails to respond to that argument). Accordingly, the Court will dismiss plaintiff's claims under Tenn. Code Ann. §§ 50-1-701 *et seq.*

### C. Plaintiff's Claim for Punitive Damages under the THRA

Defendant moves to dismiss plaintiff's claim for punitive damages arguing that plaintiff has not stated a claim that would entitle her to punitive damages under the THRA [Doc. 13 ¶ 5]. Defendant argues that "punitive damages under the THRA are only available in cases involving discriminatory housing practices and malicious harassment absent express provision authorizing punitive damages in other areas" [*Id.* (quoting *Carver v. Citizen Utilities Co.*, 954 S.W.2d 34, 36 (Tenn. 1997) (internal quotation marks omitted)]. In response, plaintiff argues that under Tennessee law, a court may award punitive damages "if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly" [Doc. 15 (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (internal quotation marks omitted)].

8

While plaintiff is correct in asserting that a court may award punitive damages where a defendant has acted intentionally, fraudulently, maliciously, or recklessly, plaintiff fails to address the narrower context of punitive damages under the THRA. In answering this specific question, the Tennessee Supreme Court has held that under the THRA, punitive damages are available only in cases involving discriminatory housing practices and malicious harassment. *See Carver*, 954 S.W.2d at 36. Under Tennessee law, a plaintiff alleging malicious harassment must show that defendant acted maliciously—that is, with ill-will, hatred, or spite, and also "demonstrate that the perpetrator intentionally intimidated the plaintiff from freely exercising a constitutional right." *Davidson v. Bredesen*, 330 S.W.3d 876, 889 (Tenn. Ct. App. 2009) (citing *Levy v. Franks*, 159 S.W.3d 66, 80 (Tenn. Ct. App. 2004)); *see also Washington v. Robertson Cnty.*, 29 S.W.3d 466, 473 (Tenn. 2000) (outlining the standard for malicious harassment under Tenn. Code Ann. § 4-21-701).

The Court agrees with defendant that plaintiff has not pled sufficient facts to establish a claim for malicious harassment, neither is this a claim for discriminatory housing practices. Therefore, the Court finds that to the extent plaintiff seeks punitive damages under the THRA, her claims will be dismissed.[3]

---

[3] Plaintiff's response to defendant's motion argues that punitive damages are recoverable under Title VII of the Civil Rights Act of 1964 and under Tennessee common law wrongful discharge. The Court notes that defendant has not argued otherwise and, therefore, does not dismiss plaintiff's claims for punitive damages under Title VII or Tennessee wrongful discharge statutes.

### D. Plaintiff's Claim for Liquidated Damages

Finally, defendant moves to dismiss plaintiff's claim for liquidated damages. Defendant argues that plaintiff has not asserted any cause of action that would entitle her to liquidated damages [Doc. 13 ¶ 6]. In particular, defendant asserts that while Title VII allows a plaintiff to recover back pay, front pay, compensatory damages, and punitive damages, it does not allow recovery of liquidated damages [*Id.* (citing 42 U.S.C. § 2000e-5(g); 42 U.S.C. § 1981a)]. Additionally, defendant asserts that the THRA and Tenn. Code Ann. § 50-1-304 do not allow recovery of liquidated damages. Plaintiff did not address this argument in her response to plaintiff's motion. *See* E.D. Tenn. L.R. 7.2 (failure to respond to a motion may be deemed a waiver of any opposition to the relief sought). Accordingly, the Court finds that defendant's motion to dismiss plaintiff's claim for liquidated damages will be granted.

### IV. Conclusion

For the reasons stated above, the Court will **GRANT** Defendant's Partial Motion to Dismiss [Doc. 13] in part, to the extent explained in this memorandum opinion, and **GRANT** plaintiff's request for leave to amend her complaint, but plaintiff may amend the complaint only in a manner consistent with this opinion.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE